UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MONTANA

In re

**LYNDA LOUISE MONROE,** and
**JAMES A MONROE**,

Case No. **05-65203-7**

Debtors.

# MEMORANDUM OF DECISION

At Butte in said District this 11th day of October, 2007.

In this joint voluntary Chapter 7 case the Debtors James A. Monroe ("James") and Lynda Louise Monroe ("Lynda") filed a motion to bifurcate their cases on August 22, 2007 (Docket No. 31), on the grounds James does not wish any of the proceeds from his medical malpractice action to be paid to Lynda's creditors. The Trustee filed an objection (Docket No. 41) on the grounds the Debtors filed a joint petition, listed the majority of their debts as joint debts, did not correct their Schedules at the 11 U.S.C. § 341(a) meeting of creditors and did not amend their Schedules for almost 2 years, and bifurcation would work to the detriment of creditors because some would go without payment. The Trustee noticed Debtors' motion for hearing which was held on September 21, 2007. The Debtors were represented at the hearing by attorney Gary S. Deschenes

("Deschenes") of Great Falls, Montana. The Trustee Darcy M. Crum appeared. No testimony or exhibits were admitted[1], and the Court took the matter under advisement after hearing argument of counsel. After review of the record, the Trustee's objection is overruled and Debtors' motion to bifurcate will be granted by separate order, for the reasons set forth below.

This Court has jurisdiction of this case under 28 U.S.C. § 1334(a). Debtors' motion to bifurcate is a core proceeding under 28 U.S.C. § 157(b)(2). This Memorandum of Decision includes the Court's findings of fact and conclusions of law.

## FACTS

The relevant facts are not in dispute. James and Lynda filed a joint voluntary Chapter 7 petition on October 15, 2005, and filed their Schedules and Statements on November 7, 2005, signed by both under penalty of perjury. Lynda did all the work preparing Debtors' Schedules. On Schedule B Debtors listed their personal property, including at paragraph 20 ("Other contingent and unliquidated claims of every nature ....") a "Claim against Dr. Phinney [sic]" listed as joint property of unknown value. James testified at hearing on August 28, 2007, that it was not correct to list the lawsuit as a joint asset on Schedule B because it was related to his injuries and damages incurred during a back operation performed on James. Schedule B also lists Frontier Apparel and Screening as jointly owned. Schedule C lists property claimed as exempt, but did not include an exemption for the medical malpractice claim.

Schedule F lists $490,700.21 in total unsecured nonpriority claims, almost all of which are listed as "joint" debts and none listed as James sole debts. Lynda testified on August 28, 2007, that she misunderstood the meaning of joint debt when she filled out Schedule F, and she

---

[1] Deschenes offered prior testimony from the hearing held in this case on August 28, 2007.

2

thought that it meant business debts which she owed with her sister Heidi as partners. She testified that only a maximum of about $35,000 in debts are debts owed all or in part by James. The Statement of Financial Affairs lists interests in businesses named "Frontier Screening", Taxpayer ID number 32-004-9467, which operated from 1985 to October 2005, and a "Burger Master" which was sold in January 2005. Schedule H lists Lynda's sister Heidi Jacobson as a codebtor for a list of creditors[2].

Proofs of Claim have been filed by several creditors listed on Schedule H. NorthWestern Energy filed Proof of Claim No. 3 on June 16, 1006, asserting a claim in the amount of $1,734.99, and the attachment shows the debt listed under the name of Frontier Apparel & Screening. Proof of Claim No. 8 filed on August 29, 2006, by Gayle & Joyce Slagle, includes invoices indicating the debts were incurred by Frontier Apparel[3] and the claim for $93,343.50 was based on a sold business and building lease. Proof of Claim No. 9 filed by Dimensional Products on September 6, 2006, in the amount of $3,109.20 was based on goods sold to Frontier Apparel & Screening. Proof of Claim No. 11 filed by the IRS names both Lynda and James for unpaid FUTA tax with a separate taxpayer ID number 81-0503897, and asserts a priority claim in the amount of $482.20 and unsecured nonpriority penalty claim in the amount of $46.41.

Other Proofs of Claim such as Nos. 4 and 5 filed by Chase Bank USA, NA ("Chase Bank") on June 21, 2006, include attachments naming only James as debtor, as does Proof of

---

[2]Schedule H lists creditors as: Advanta Bank Corp, Dimensional Products, Frank Jacobson, Gayle & Joyce Slagle, Global Net, Hazel Budesky, Imprints Wholesale, IRS, McLeod USA, Midwest, Montana Department of Revenue, NW Energy, and UPS.

[3]The first attachment states the business was open and operating "by Monroes", but does not include any writing signed by James showing that he was obligated to Slagles.

3

Claim No. 7 filed by Citibank/Choice on August 24, 2006. Proof of Claim No. 6 filed by American Express Centurion Bank on July 5, 2006, names only Lynda as the debtor. Proofs of Claim Nos. 1 and 2 filed by Community Federal Credit Union ("Community FCU") are secured claims, and Proof of No. 10 filed by MBNA America, all are for joint debts naming both James and Lynda on the attachments.

Crum was appointed as Trustee in this joint case. She employed herself as attorney, and then applied for employment of attorney Terry N. Trieweiler ("Trieweiler") of Meloy Trieweiler as attorneys for the estate, and his employment was approved by Order entered on July 21, 2006. The Trustee's application to employ Trieweiler stated that he had filed a medical malpractice claim against "Dr. Lee Finney" on behalf of James[4].

Debtors amended their Schedule C on June 12, 2007 (Docket No. 26), and added an exemption described as "Claim against Dr. Finney" for "all future medicals as allowed by statute" listed as MONT. CODE ANN. § 25-13-608(f)[sic][5], in an unknown amount. The Trustee did not file an objection to Debtors' amended Schedule C until September 11, 2007, beyond the 30-day time limit for filing an objection to claim of exemption after amendment to the Schedules under F.R.B.P. Rule 4003(b), and did not file a request for extension of time to object before the

---

[4]Trieweiler testified on August 28, 2007, that James' medical malpractice claim had been submitted to binding arbitration with 14 other claimants, for which the defendant's insurer had dedicated $4.5 million in total coverage. All other claimants have settled. The Trustee has moved for approval of a settlement of James' claim for an amount Trieweiler testified the latest figure was $328,050. Debtors object to settlement of the claim because they wish to proceed with trial before the arbitrator. Trieweiler testified that it was his recommendation not to accept the offer.

[5]Section 25-13-608(1)(f) exempts "without limitation", "(f) benefits paid or payable for medical, surgical, or hospital care to the extent they are used or will be used to pay for the care".

4

30-day limit to object expired.

The Trustee filed a motion to approve settlement of the medical malpractice case on July 6, 2007, followed by a motion for approval of reduced settlement on August 7, 2007. Debtors filed their motion to bifurcate the cases on August 22, 2007, and filed objections to approval of the settlement. The Trustee objected to bifurcation on August 31, 2007.

On September 19, 2007, Debtors filed a notice of amendment of Schedules B and F. Amended Schedule B changed the ownership of Frontier Apparel and Screening at paragraph 14 to the wife's sole property, and changed ownership of the claim against Dr. Finney at paragraph 21 to husband's sole property. Schedule F was amended on the first page by listing the AT&T Universal Card debt as James' sole debt rather than joint; at the second page by changing the Chase debt from wife to husband, Dimensional Products' claim from joint to wife's, Frank Jacobson's claim from joint debt to wife's, Gayle & Joyce Slagle's claim from joint debt to wife's, Global Net's claim from joint debt to wife's, and Hazel Budeski's claim from joint debt to wife's; at the third page all claims listed as joint debts were changed to wife's; at the fourth page MBNA America's claim was changed from joint debt to husband's, the claims of McLeod USA, Midwest, Montana Department of Revenue and NW Energy were changed from joint debts to wife's; and the UPS debt on the fifth page was changed from joint debt to wife's. No objection to the amendment to Schedules B and F has been filed by the Trustee.

### DISCUSSION

The Trustee agrees in her objection, at page 2, that this Court has the discretion to look at the circumstances of the case in deciding whether to grant the bifurcation. The Trustee argues

that she relied on the original schedules in settling the personal injury case[6] and negotiating with creditors, and that the doctrines of laches and detrimental reliance apply and the Court should deny bifurcation.

Rule 1015(b) of the Federal Rules of Bankruptcy Procedure provide that if a joint petition is pending by a husband and wife, the court may order a joint administration of the estates, but that "[p]rior to entering an order the court shall give consideration to protecting creditors of different estates against potential conflicts of interests." Local Rule 1015-1(a) of the Montana Local Bankruptcy Rules ("Mont. LBR"), "Joint Administration and Consolidation", provides at (b) in pertinent part: "The debtors' estates shall be deemed consolidated in a case jointly filed by a husband and wife, *unless the Court orders otherwise*." (Emphasis added).

A leading commentator explains consolidation of cases in a marital context as follows:

[W]hen one spouse owns a substantial amount of non-exempt separate or restricted community property, the estates will not be fully consolidated, for to do so would be detrimental to a particular class of creditors. Generally, the estates of husband and wife should not be consolidated when the creditors of one estate will benefit to the detriment of creditors of the other and when the affairs and when the affairs and the assets of the couple are not so intermingled as to prevent the efficient administration of the estates is they are co-administered.

> In any event, consolidation does not alter the debtor's state law property rights or bankruptcy rights that are derivative of those rights. Thus, the Court of Appeals for the Fourth Circuit held, in *Bunker v. Peyton (In re Bunker)*, that even if two joint debtors' estates were consolidated, creditors who were not joint creditors entitled to pursue the debtors' respective interests in entireties property did not thereby become joint creditors, since the consolidation did not change their state law rights.

---

[6]Approval of the Trustee's motion to approve the settlement of James' medical malpractice claim is being held in abeyance pending related matters. Debtors' amended Schedules claimed the medical malpractice claim without limitation under Montana's exemption statute, MONT. CODE ANN. § 25-13-608(1)(f). The Trustee's objection to James' claim of exemption is set for hearing on October 12, 2007, and is not the subject of this Memorandum.

2 COLLIER ON BANKRUPTCY, ¶ 302.06 (15th ed. 2006).

The footnote after the first sentence of the above quote from COLLIER, footnote 11, states:

> Under provisions governing the distribution of assets, separate property of a spouse is distributed solely to that spouse's creditors until they have been paid in full. Only then is the separate property of a spouse available to creditors of the other spouse. *See* 11 U.S.C. § 726(c)(2)(C) and (D) .... [citing Congressional reports].

Under the above authority, the Monroes' cases would not be deemed fully consolidated if James' medical malpractice claim is nonexempt, because that would be detrimental to a particular class of creditors, *i.e.*, his separate creditors. Further, if his medical malpractice claim is determined to be fully exempt then the creditors would not receive any part of it as a distribution. Either way, Lynda's separate creditors, under COLLIER ¶ 302.06, would not receive any distribution from James' separate nonexempt property until his creditors have been paid in full. Debtors' amendment to Schedule F shows that they have several separate claims against them, and the Trustee did not file an objection to the amendment. Debtors' amended Schedule F is corroborated by the Proofs of Claim on file, many of which show that their claims are against either the husband James or his wife Lynda separately, not joint debts.

The evidence in the record shows that the medical malpractice claim is solely property of James[7], by virtue of Debtors' amendment to Schedule B, and further that Frontier Apparel and Screening is solely property of Lynda who is therefore solely responsible, between the two Debtors, for that entity's debts. Unless the Trustee prevails in her objection to James' claim of exemption, the entire amount of the unliquidated malpractice claim is exempt.

---

[7]An early version of the complaint apparently included a claim by Lynda for loss of consortium, but that claim was not included in the case submitted to binding arbitration.

The Trustee argues that Debtors waited too long to amend their Schedules, but the Trustee failed to timely object to any of the amendments. Amendment of schedules by the debtor is liberally allowed pursuant to F.R.B.P. 1009(a) as a matter of course at any time before the case is closed. *Arnold v. Gill (In re Arnold)*, 252 B.R. 778, 784 (9th Cir. 2000), (citing *Martinson v. Michael*, 17 Mont. B.R. 192, 198, 163 F.3d 526, 529 (9th Cir. 1998)); *Doan v. Hudgins (In re Doan)*, 672 F.2d 831, 833 (11th Cir. 1982); *Magallanes v. Williams (In re Magallanes)*, 96 B.R. 253, 256 (9th Cir. BAP 1988) (citing cases). "The bankruptcy court has no discretion to disallow amended exemptions, unless the amendment has been made in bad faith or prejudices third parties." *Arnold v. Gill (In re Arnold)*, 252 B.R. at 784. *Michael* notes: "A court may, however, deny the debtors leave to amend 'on a showing of a debtor's bad faith or of prejudice to creditors'." 17 Mont. B.R. at 198, quoting *In re Doan*, 672 F.2d 831, 833 (11th Cir. 1982) (per curiam). "The usual ground for a finding of 'bad faith' is the debtor's attempt to hide assets. *Arnold*, 252 B.R. at 785. The party alleging the bad faith bears the burden of proof. *See Magallanes*, 96 B.R. at 256. To evaluate whether a debtor has engaged in bad faith by attempting to hide assets, a bankruptcy court must consider the entirety of the evidence. *Arnold*, 252 B.R. at 785. The mere fact that a debtor omitted an asset from the schedules, standing alone, is insufficient to prove bad faith. *Magallanes*, 96 B.R. at 256. In addition, "[b]y itself, claiming an exemption late is simply not bad faith." *Arnold*, 252 B.R. at 786. In *Michael* this Court was reversed twice for not allowing a late amendment and exemption, and therefore the Trustee's argument that the Debtors waited too long before amending their Schedules is not well taken.

The Trustee argued at hearing that the Debtors' lack of disclosure hindered her administration of the estate for 2 years by not amending promptly. However, the mandatory

8

Ninth Circuit authority quoted above makes clear that the Trustee has the burden of proof to show bad faith and prejudice to creditors, and that omitting assets from the Schedules or claiming an exemption late is not enough. The evidence shows no effort by the Debtors to hide assets, as the medical malpractice claim was listed at paragraph 20 of the original Schedule B.

No evidence exists in the record of prejudice to creditors by Debtors' amendment. In the first place, unless the creditors have a valid right to payment from James they would have no right to a distribution from his estate's medical malpractice claim even if his claimed exemption is disallowed, and Rule 1015(b) specifically requires this Court to protect creditors of different estates. Secondly, the malpractice claim may be exempt from all creditors. In short, the Court concludes after considering the entirety of the evidence that the Trustee failed to satisfy her burden of proof to show bad faith by the Debtors or prejudice to the creditors.

The Court deems it appropriate in its discretion to overrule the Trustee's objection and grant Debtors' motion to bifurcate.

## CONCLUSIONS OF LAW

1. This Court has jurisdiction of this case under 28 U.S.C. § 1334(a).

2. Debtors' motion to bifurcate is a core proceeding under 28 U.S.C. § 157(b)(2).

3. Debtors have a liberal right to amend their Schedules under F.R.B.P. 1009(a). The Trustee failed to satisfy her burden of proof to show that Debtors' amendment of their Schedules was filed in bad faith or is prejudicial to creditors.

4. The Court deems it appropriate in its discretion to overrule the Trustee's objection and grant Debtors' motion to bifurcate.

**IT IS ORDERED** a separate Order shall be entered in conformity with the above

9

overruling the Trustee's objection (Docket No. 41), granting the Debtors' motion to bifurcate filed on August 22, 2007 (Docket No. 31) and bifurcating the above-captioned Chapter 7 cases so that each Debtor's assets will be used only for that Debtor's creditors.

BY THE COURT

*/s/ Ralph B. Kirscher*

HON. RALPH B. KIRSCHER
U.S. Bankruptcy Judge
United States Bankruptcy Court
District of Montana